Bruce HANSON and Irene C. Hanson, Plaintiffs-Appellants,

v.

TOWN OF FLOWER MOUND, et al., Defendants-Appellees.

No. 81-2055
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

July 2, 1982.

Bruce Hanson, Irene Hanson, pro se.

Saner, Jack, Sallinger & Nichols, Robert E. Hager, Dallas, Tex., for defendants-appellees.

Before CLARK, Chief Judge, REAVLEY and RANDALL, Circuit Judges.

PER CURIAM:

Plaintiffs brought this *pro se* action for damages on the ground that the defendant Town of Flower Mound, which taxes them and interferes with their liberty, does not have a republican form of government. The district court dismissed for lack of jurisdiction *sua sponte.* See Fed.R.Civ.P. 12(h)(3). After dealing with a question concerning our own jurisdiction, we affirm.

## I. *Appellate Jurisdiction*

We raise the question of our own jurisdiction *sua sponte.* The district court entered an order reciting "that this action is dismissed in its entirety with prejudice." Plaintiffs appeal from this order. Our examination of the record and the docket sheet indicates that a final judgment was never entered. *See* Fed.R.Civ.P. 58 ("Every judgment shall be set forth on a separate document.").

Under 28 U.S.C. § 1291, "[t]he courts of appeals ... have jurisdiction of appeals from all *final decisions* of the district courts of the United States" (emphasis added). By its terms, § 1291 does not require a "final judgment," nor does it incorporate any procedural rule.

Rule 4(a) of the Federal Rules of Appellate Procedure provides that the time to appeal in a civil case runs from "the date of

the entry of the judgment *or order* appealed from" (emphasis added). In *United States v. Indrelunas*, 411 U.S. 216, 93 S.Ct. 1562, 36 L.Ed.2d 202 (1973), the Supreme Court held that the time to appeal from a judgment under Rule 4 does not begin to run until the judgment has been entered as a separate document, as required by Rule 58 of the Federal Rules of Civil Procedure. Accordingly, the Court reversed the court of appeals' dismissal of an appeal. The Court rejected the court of appeals' holding that the appellant's time to appeal began to run on the day the jury returned its verdicts and the district court directed a docket entry reciting the words, "Enter judgment on the verdicts." The Court reasoned that the separate document rule "must be mechanically applied in order to avoid ... uncertainties as to the date on which a judgment is entered." *Id.* at 222, 93 S.Ct. at 1565.

Taking the Court's "mechanical application" language perhaps too literally, this court applied *Indrelunas* in a long line of decisions to *dismiss* appeals when no separate document had been entered by the district court. The reported decisions include *State Nat'l Bank v. United States*, 488 F.2d 890, 892–93 (5th Cir. 1974); *Taylor v. Sterrett*, 527 F.2d 856, 857–58 (5th Cir. 1976); *Nunez v. Superior Oil Co.*, 535 F.2d 324 (5th Cir. 1976); *Sassoon v. United States*, 549 F.2d 983, 984 (5th Cir. 1977); *Furr's Cafeterias, Inc. v. N.L.R.B.*, 566 F.2d 505 (5th Cir. 1978). Although there was some recognition in our opinions that there was a difference between requiring strict compliance with the rule to avoid unfair loss of the right to appeal and requiring

strict compliance when the district court's decision is final under § 1291 and the decision has been appealed within the time limits set by Rule 4, *see Sassoon v. United States*, 549 F.2d at 984 (noting that *Indrelunas* "address[ed] rather different facts"), we were bound by our initial interpretation of *Indrelunas* to dismiss the appeals.

Our understanding of *Indrelunas*, however, was rejected by the Supreme Court in *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978). In *Mallis*, the Supreme Court held that the Second Circuit had properly assumed jurisdiction of an appeal from an order of dismissal under § 1291, even though no separate judgment had been entered, when the order "represent[ed] the final decision in the case" and the appellee did not object to the appeal. *Id.* at 387, 98 S.Ct. at 1121. "Under these circumstances," the Court held, "the parties should be deemed to have waived the separate-judgment requirement of Rule 58 ...." *Id.* at 388, 98 S.Ct. at 1121.

While *Mallis* thus permits us to take jurisdiction, it does not require us to do so.[1] *Mallis* makes it clear that we do not lack power to hear appeals from orders disposing of the entire litigation when the appellee does not invoke the separate document requirement; but there remains the question whether this court should adhere to its rule and refuse to exercise jurisdiction whenever the parties have attempted to bring an appeal without obtaining entry of a final judgment.[2]

Thus, we are confronted with a question of *stare decisis*.[3] It is the firm

---

1. *See Mallis*, 435 U.S. at 384, 98 S.Ct. at 1119: "We assume, without deciding, that the requirements for an effective judgment set forth in the Federal Rules of Civil Procedure must generally be satisfied before § 1291 jurisdiction may be invoked."

2. Adherence to this rule might deter careless practice. The failure of litigants before this court to ensure that a judgment is entered as a separate document is all too frequent.

3. *Stare decisis* problems might be avoided by arguing that the adoption of a waiver exception by this panel would not be a departure from

our precedent. None of the reported separate document cases makes it clear whether the court was raising the separate document requirement on its own motion. Therefore, we could assume that the failure to enter a separate document was raised in each of those cases by the appellee. We think, however, that such a reading of the cases would be disingenuous. In many of the cases, there is no indication that the appellee made a motion to dismiss the appeal or raised the separate document issue on his own. *See, e.g., Sassoon v. United States*, 549 F.2d at 985 ("We minimize this procedural imbroglio by ourselves dismissing

rule of this circuit that a panel cannot disregard precedent absent an "overriding" Supreme Court decision. *See Washington v. Watkins,* 655 F.2d 1346, 1354 n.10 (5th Cir. 1981) (collecting cases). We find no post-*Mallis* decision of this court squarely holding that *Mallis* is "overriding." [4]

Although *Mallis* does not require us to modify our rule, we nevertheless conclude that it is an overriding change in the law. Our adoption of the separate document rule was based entirely on the theory that *Indrelunas* required the rule. *See State Nat'l Bank v. United States,* 488 F.2d at 892–93; *Taylor v. Sterrett,* 527 F.2d at 856–57. According to *Mallis,* however, *Indrelunas* does not require the rule when the appellee fails to object. Our decisions did not rest on any policy concern independent of *Indrelunas*;

to the contrary, our few independent expressions of policy concerns indicated dissatisfaction with a literal, mechanical application of the rule. *See Taylor v. Sterrett,* 527 F.2d at 858 ("such action on our part does not appear to accomplish any meritorious result ..., creating only delay"); *Sassoon v. United States,* 549 F.2d at 985 (suggesting that an exception might be made "in a proper case" and citing the authorities eventually relied on by the Supreme Court in *Mallis,* 435 U.S. at 386–87, 98 S.Ct. at 1121).

We conclude that we are free to hold that we may take jurisdiction of an appeal from a "final decision" under § 1291, even though no separate judgment has been entered, when the parties fail to raise the issue.[5]

---

the appeal."); *Nunez v. Superior Oil Co.,* 535 F.2d at 325; *Taylor v. Sterrett,* 527 F.2d at 857–58. And indeed, the Supreme Court read *Sassoon* as contrary to the Second Circuit's decision in *Mallis. See Mallis,* 435 U.S. at 382–83 & n.2, 98 S.Ct. at 1119 & n.2. Moreover, some of our cases stated that without a separate document we were without jurisdiction, *see, e.g., Sassoon,* 549 F.2d at 984; the court has the duty to notice its lack of jurisdiction *sua sponte.*

4. While *Escamilla v. Santos,* 591 F.2d 1086 (5th Cir. 1979), could be read as adopting the Second Circuit rule permitted in *Mallis,* we decline to give *Escamilla* so broad a reading. In *Escamilla,* a panel of this court applied *Mallis* to bar a district court from granting a request for attorneys' fees when the request was made almost two months after the district court had issued a "memorandum opinion" disposing of all the issues the parties had submitted to it. The panel held that the "memorandum opinion" was a "final judgment" under *Mallis.* "After *Bankers Trust v. Mallis,*" the panel wrote, "it is clear that a memorandum opinion will be considered a final judgment despite the district court's failure to follow the separate document requirement of Rule 58 ..., if the district court intended the memorandum opinion to represent a final judgment and the parties treated it as such." *Id.* at 1087. While *Escamilla*'s broad language could be read as adopting the Second Circuit rule, the issue in *Escamilla* did not involve appellate jurisdiction. The panel neither cited nor considered our long line of cases dismissing appeals under the separate document rule. Moreover, the *Escamilla* opinion simply cites *Mallis*; but, as noted above, there is nothing in *Mallis* that *requires* a court of appeals to exercise its

jurisdiction when the separate document rule has not been complied with. Finally, we note that the scope of the *Escamilla* opinion is troubling. If the district court in *Escamilla* had no power to award attorneys' fees because the "memorandum opinion" was a "final judgment," and the case was no longer "pending," *id.* at 1088, then logically the district court also no longer had power to enter a separate judgment and thereby begin the time to appeal. This latter result, however, is flatly inconsistent with *Indrelunas,* which was not overruled by *Mallis. See Mallis,* 435 U.S. at 386 & n.7, 98 S.Ct. at 1120–21 & n.7. Accordingly, we read *Escamilla* only as an expression of this court's willingness to adopt the waiver rule permitted by *Mallis.*

5. *Accord, Stein v. Reynolds Secs., Inc.,* 667 F.2d 33, 33 n.1 (11th Cir. 1982) (which court faced the same *stare decisis* question we face here, *see Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981)); *Giza v. Secretary of HEW,* 628 F.2d 748, 751 n.5 (1st Cir. 1980); *Mallis v. FDIC,* 568 F.2d 824 (2d Cir. 1977), *cert. dismissed sub nom. Bankers Trust Co. v. Mallis,* 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978); *Caperton v. Beatrice Pocahontas Coal Co.,* 585 F.2d 683, 691 (4th Cir. 1978); *U. S. General, Inc. v. City of Joliet,* 598 F.2d 1050, 1051 n.1 (7th Cir. 1979); *De Luz Ranchos Inv., Ltd. v. Coldwell Banker & Co.,* 608 F.2d 1297, 1299 n.1 (9th Cir. 1979); *Stubbs v. United States,* 620 F.2d 775, 776 n.1 (10th Cir. 1980). Some courts have gone further and taken jurisdiction even when the appellee has objected to the lack of a separate judgment. *Leonhard v. United States,* 633 F.2d 599, 611–12 (2d Cir. 1980), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981); *International*

■ In so holding, we wish to stress three points. First, *Indrelunas* is still the law. *See Mallis*, 435 U.S. at 386 & n.7, 98 S.Ct. at 1120–21 & n.7. If an appellant files his notice of appeal from a final judgment within the prescribed time after the entry of the judgment as a separate document, his appeal cannot be defeated by the argument that his time to appeal began to run from the entry of some earlier decision, opinion, or order.[6]

■ Second, this decision does not change the law when the appellee does object to the failure to enter the judgment as a separate document.[7]

■ Third, it remains the better practice to have the judgment entered as a separate document. *See Turner v. Air Transp. Lodge 1894*, 585 F.2d 1180, 1182 (2d Cir. 1978) (remanding when the finality of the district court's decision was unclear). If an appellant realizes that a final judgment has not been entered, or that there may be some doubt about it, he should take steps to obtain the entry of a certain final judgment, and then file a new notice of appeal. *See, e.g., Calmaquip Eng'r W. Hemisphere Corp. v. West Coast Carriers Ltd.*, 650 F.2d 633, 635–36 (5th Cir. 1981).

Since neither party to this appeal has raised the failure to obtain entry of the judgment as a separate document, we have jurisdiction and we proceed to the merits.

## II. *A Republican Form of Government*

■ Plaintiffs allege that the government of the Town of Flower Mound is a nullity because all power is reposed in the "Town Council," which plaintiffs allege is a legislature. Plaintiffs argue that this claim presents a federal question under 28 U.S.C. § 1331 by virtue of the Guaranty Clause of the United States Constitution, which provides: "The United States shall guarantee to every State in this Union a Republican Form of Government . . . ." U.S.Const. art. IV, § 4. Even if the Guaranty Clause has any application to a municipal government, the question whether a government is a nullity because its form violates the Clause is a nonjusticiable political question.

---

*Brotherhood of Teamsters v. Western Pa. Motor Carriers Ass'n*, 660 F.2d 76, 79–80 (3d Cir. 1981); *Hummer v. Dalton*, 657 F.2d 621, 623–24 (4th Cir. 1981); *In re Pacific Far E. Line, Inc.*, 654 F.2d 664, 666 n.2 (9th Cir. 1981).

**6.** Any implication to the contrary in *Escamilla v. Santos*, 591 F.2d 1086 (5th Cir. 1979), is plainly contrary to *Indrelunas* and is not the law. *See* note 4 *supra*.

**7.** It may be that the order in this case—an order dismissing the entire action with prejudice—is appealable even when the appellee does object to the failure to enter the judgment as a separate document. None of our reported decisions applying the separate document rule to dismiss an appeal has involved a district court order of dismissal. *See State Nat'l Bank v. United States*, 488 F.2d at 892–93 (appeal from order denying motion for judgment n.o.v. and new trial); *Taylor v. Sterrett*, 527 F.2d at 857 (appeal from an order requiring defendants to submit a jail-improvement plan to court); *Nunez v. Superior Oil Co.*, 535 F.2d at 325 (appeal from "ruling" granting summary judgment); *Sassoon v. United States*, 549 F.2d at 984 (appeal from an order denying habeas corpus relief); *Furr's Cafeterias, Inc. v. NLRB*, 566 F.2d at 506 (appeal from "final order" entered after hearing on preliminary injunction); *Calmaquip Eng'r W. Hemisphere Corp. v. West Coast Carriers Ltd.*, 650 F.2d 633, 635–36 (5th Cir. 1981) (appeal from order granting summary judgment). To the contrary, we have held that an order dismissing all of an action with prejudice is a final order appealable under § 1291 without regard for the separate document requirement, *see, e.g., Washington v. Norton Mfg., Inc.*, 588 F.2d 441, 443 n.3 (5th Cir.), *cert. denied*, 442 U.S. 942, 99 S.Ct. 2886, 61 L.Ed.2d 313 (1979), even when appellate jurisdiction has been disputed, *see, e.g., LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 603 (5th Cir. 1976) (dismissal under Rule 41). *See generally United Steelworkers of America v. American Int'l Aluminum Corp.*, 334 F.2d 147, 150 & n.4 (5th Cir. 1964) (Rule 12(b) motion treated in part as Rule 56 motion for summary judgment), *cert. denied*, 379 U.S. 991, 85 S.Ct. 702, 13 L.Ed.2d 611 (1965). These latter cases are not necessarily in conflict with the separate document cases, since they do not expressly discuss the separate document requirement. Nevertheless, these cases are in tension. An order dismissing an entire action with prejudice seems no more final than an order granting summary judgment on all claims, as in the *Nunez* and *Calmaquip* cases. *Compare* 15 C. Wright & A. Miller, Federal Practice and Procedure § 3914, at 541 (orders granting motions to dismiss are final) *with id.* at 587 (orders granting summary judgment on all claims are final).

*Luther v. Borden,* 48 U.S. (7 How.) 1, 42, 12 L.Ed. 581, 599 (1849); *see Baker v. Carr,* 369 U.S. 186, 218–26, 82 S.Ct. 691, 710–14, 7 L.Ed.2d 663 (1962).[8]

 Plaintiffs also argue that the question whether the Town is organized in violation of the Texas Constitution[9] presents a federal question because the treaty by which Texas became part of the Union conditioned the state's entry on the United States' approval of its constitution. Thus, plaintiffs argue, the Texas Constitution is federal law. We decline the plaintiffs' invitation to transform most state law into federal law.[10] Congress has conditioned the entry of virtually every state since the original 13 on its approval of the state's constitution. "A Constitution thus supervised by Congress would, after all, be a Constitution of a state .... Its force would be that of a state Constitution, and not that of an act of Congress." *Coyle v. Smith,* 221 U.S. 559, 568, 31 S.Ct. 688, 690, 55 L.Ed. 853 (1911). That Texas was the only state admitted by treaty is irrelevant; a treaty is a law to be given the same force and effect as any other law. *See Whitney v. Robertson,* 124 U.S. 190, 193–94, 8 S.Ct. 456, 458, 31 L.Ed. 386 (1888).[11]

 Finally, plaintiffs contend that they presented a federal question in their claim that they were illegally arrested. The district court rejected this argument twice, first implicitly in its opinion and order dismissing the suit, and then expressly in its order denying plaintiffs' motion to amend the order. The district court read the plaintiffs' complaint to allege that the arrest was illegal only because the Town's form of government was illegal. We agree that this is the only fair reading of plaintiffs' allegation:

"It is a true and material fact that the Plaintiff while driving on the county roads within the alleged corporate town limits was accosted by a member of the Legislative Police and ordered to halt his motor vehicle for inspection of Plaintiff's driver license, *said action being an unlawful search and seizure* by the Defendants' Legislative Police, *since only police of a true executive department have search and seizure authority,* all of which was

---

8. The district court characterized its dismissal as one for lack of subject matter jurisdiction. In *Baker v. Carr,* however, the Supreme Court considered the cognizability of a Guaranty Clause question to be a question of justiciability, *see* 369 U.S. at 218–26, 82 S.Ct. at 710–14, and it also held that dismissals for lack of a justiciable question are properly treated as dismissals for failure to state a claim, *see id.* at 196, 198–204, 82 S.Ct. at 698–99, 700–03.

Nevertheless, we hold that the district court's dismissal for lack of subject matter jurisdiction was proper. "[A] suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution ... is wholly insubstantial and frivolous." *Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946), *cited in Baker v. Carr,* 369 U.S. at 199, 82 S.Ct. at 700. The *Bell v. Hood* exception is satisfied only in rare circumstances, one of which exists when the plaintiff's claim "is clearly foreclosed by a prior Supreme Court decision." *Williamson v. Tucker,* 645 F.2d 404, 416 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). In this case, plaintiffs' claim is clearly foreclosed by a long line of Supreme Court decisions beginning with *Luther v. Borden. See Baker v. Carr,* 369 U.S. at 223–24, 82 S.Ct. at 713–14 (collecting cases).

9. Plaintiffs rest their claims on Article II, § 1 ("The powers of the Government of the State of Texas shall be divided into three distinct departments ....") and on Article I, § 2 ("The faith of the people of Texas stands pledged to the preservation of a republican form of government ....").

10. If a state constitution is federal law, it would seem to follow that all laws enacted under it are also federal laws.

11. Plaintiffs rely on *Missouri v. Holland,* 252 U.S. 416, 40 S.Ct. 382, 64 L.Ed. 641 (1920), for the proposition that Congress may do by treaty what it could not constitutionally do by statute. Even if such a broad principle could be drawn from *Holland, compare Reid v. Covert,* 354 U.S. 1, 18, 77 S.Ct. 1222, 1231, 1 L.Ed.2d 1148 (1957) (plurality opinion) ("It would be completely anomalous to say that a treaty need not comply with the Constitution ...."), the question in this case is not whether Congress *could* make Texas law federal law by approving its constitution; the question is whether that is what Congress *did.* The force and effect of its approval of the Texas Constitution by treaty is no different from the force and effect of its approval of the constitution of any other state by statute.

contrary to the Fourth Amendment of the United States Constitution." (emphasis added).

On this appeal, however, plaintiffs claim in their brief that the arrest was made without probable cause. They argue that the district court should have recognized this fact because the allegation refers to the Fourth Amendment. They also point out that the complaint's "jurisdictional" allegations refer to 42 U.S.C. § 1983 [12] and its jurisdictional counterpart, 28 U.S.C. § 1343(3). Finally, they point to Bruce Hanson's single statement in his 110-page deposition that the stop was "a matter of [the officer's] whim and desire." [13]

We assume for the sake of argument that a stop of plaintiffs' automobile without probable cause would be a violation of plaintiffs' Fourth Amendment rights and thus actionable under 42 U.S.C. § 1983. *But cf. Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979) (requiring only an "articulable and reasonable suspicion" for discretionary stops to check license and registration). Plaintiffs did not allege in their complaint that the automobile was stopped without probable cause. In none of plaintiffs' submissions to the district court—not in their briefs on the question of jurisdiction nor even in their motion to amend the order based on their Fourth Amendment claim— did plaintiffs suggest that their automobile was stopped without probable cause. Plaintiffs' citation of the Fourth Amendment in their complaint did not put the defendants or the district court on notice of any claim that their automobile was stopped without probable cause. To state a claim, a pleader must allege facts, not legal conclusions. *See, e.g., Davidson v. Georgia*, 622 F.2d 895, 897 (5th Cir. 1980). The only fact in the complaint indicating that the stop might be illegal was the fact that the police had been appointed by an allegedly illegal government. As for Hanson's statement in his

deposition, even if we assume that this deposition was properly before the district court on its motion to dismiss, the court had no duty to pore over the deposition to find intimations of claims that plaintiffs had not brought to the court's attention.

While complaints are to be construed liberally and leave to amend a complaint is to be granted liberally, *see* Fed.R. Civ.P. 8(f); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1215, at 113, § 1216, at 124 (1969), an attempt to amend one's pleadings in an appellate brief comes too late. *See Claus v. Gyorkey*, 674 F.2d 427, 432 (5th Cir. 1982). The district court's order is AFFIRMED.

---

**12.** Section 1983 is not itself a jurisdictional statute; it merely creates a cause of action. *Curtis v. Taylor*, 625 F.2d 645, 649, *modified on other grounds and rehearing denied*, 648 F.2d 946 (5th Cir. 1980).

**13.** In this same deposition Hanson also testified that the officer informed him that he was exceeding the speed limit in a school zone.